801 A.2d 487

**Diana A. BURGER, Appellant,**

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW, Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 2002.

Decided July 16, 2002.

140

Stephen D. Wicks, Altoona, for Diana A. Burger.

Clifford F. Blaze, Maribeth Wilt–Seibert, Harrisburg, for Unemployment Compensation Board of Review.

David Paul Andrews, Altoona, Michael J. Wagner, West Chester, for Garvey Manor.

Composition of the Court: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION

Justice EAKIN.

Claimant Diana A. Burger was a certified nurses' aide at Garvey Manor, a nursing home. After treating her for a workplace injury, her physician sent her employer a bill; an attachment included her medical history, which indicated Claimant regularly used illegally obtained prescription medications and marijuana. When questioned by her employer, Claimant admitted that she used marijuana every evening, but claimed she did not report to work directly after using marijuana; she denied using prescription medications illegally.

Claimant was fired because of her drug use. She applied for unemployment benefits; the Office of Employment Security (OES) deemed her ineligible under § 402(e) of the Unemployment Compensation Law.[1] After a hearing, the referee concluded:

1. An employee shall be ineligible for compensation for any week:

Although the claimant's situation does not fall under the established policy of the employer, it is behavior which an employer should not have to accept ·from an employee.

The policy cited by the employer is a policy which requires that an individual not report to work or work under the influence of alcohol or illegal drugs or the improper use of prescription medicine, which causes impairment. *There is nothing in the record to establish that any of claimant's admitted drug use, or non-admitted drug use, affected her work performance.*

However, the circumstances here do fall within the general definition set forth above [§ 402(e) ]. Based on the record presented, the claimant is ineligible for benefits.

Referee's Decision, 2/2/00, at 3 (emphasis added). The Unemployment Compensation Board of Review (UCBR) affirmed the referee's decision.

■■■■ On appeal to the Commonwealth Court, Claimant contested the finding of willfull misconduct, based on the absence of evidence connecting her drug use to her work performance. *See Webb v. UCBR,* 670 A.2d 1212, 1216 (Pa. Cmwlth.1996) (willful misconduct under § 402(e) must be connected with claimant's work). The court considered the record and concluded Claimant's admissions gave rise to a legitimate concern for Employer:

> . . . .
>
> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.
>
> 43 P.S. § 802(e). An employer bears the burden of proving a claimant engaged in willful misconduct. *Navickas v. UCRB,* 567 Pa. 298, 787 A.2d 284, 288 (2001). Although willful misconduct is not statutorily defined, this Court has defined that term as:
>
> a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.
>
> *Id.* "[T]he conduct that rises to the level of willful misconduct may vary depending upon an individual employee's specific occupation or work situation." *Id.*

The Court agrees that [Claimant's] conduct constituted willful misconduct connected to her work. First, [Claimant] admitted to using marijuana at home in the evening every day, and she agreed that she should not be working when she was under its influence—she denied ever reporting to work in such a condition. In addition, she admitted to having a problem in regard to using painkillers that were not prescribed for her, for which she thought Employer should have given her rehabilitation rather than termination. N.T. at pp. 7, 9. The Court agrees that these admissions gave rise to a perfectly legitimate concern on Employer's part that [Claimant] might well attempt to work in a sufficiently impaired condition to create safety problems. [Claimant's] causing this concern was conduct connected to her work in violation of the standards that Employer had a right to expect.

*Burger v. UCBR,* 780 A.2d 731, 733 (Pa.Cmwlth.2001). The Commonwealth Court also stated, in the alternative, that Claimant was at fault for her unemployment because her admitted conduct was inconsistent with acceptable standards of behavior:

In the present case, although there was no arrest, [Claimant's] admitted conduct is inconsistent with acceptable standards of behavior. The daily use of illegal drugs involved here, unlike some other forms of criminal activity, does reflect directly upon [Claimant's] ability to perform her duties.

*Id.,* at 734. Therefore, the court concluded granting unemployment benefits would be contrary to the policy in § 3 of the statute and affirmed the UCBR's decision.[2]

**2.** Section 3 states:

Declaration of Public Policy

\* \* \*

The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

There is no question Claimant could be fired for her drug use; a responsible nursing home cannot be criticized for this. However, the question of justifiable termination and eligibility for unemployment benefits are two different things; an employee may be fired for completely proper reasons, yet remain eligible for benefits. We accepted allocatur to determine whether this illegal off-duty conduct, which is not shown by the evidence to have actually or potentially affected the employee's work, may be grounds for denying benefits under the statute. Claimant contends § 402(e) does not apply because this section does not govern conduct away from work. She also asserts denial under § 3 was not a matter properly before the Commonwealth Court, as this was not raised by her employer before the referee or the UCBR.

Sections 3 and 402(e) are not parallel legal theories: Section 402(e) is used to disqualify claimant for *work-related* misconduct. Section 3 is used to disqualify claimants for *non-work-related* misconduct which is inconsistent with acceptable standards of behavior and which directly affects the claimant's ability to perform his assigned duties.

*Southeastern Pennsylvania Transportation Authority v. UCBR,* 96 Pa.Cmwlth. 38, 506 A.2d 974, 977 (1986) (emphasis in original; citation omitted). The analysis is different under each section. *See Kiehl v. UCBR,* 747 A.2d 954, 956 (Pa. Cmwlth.1999) (where claimant has been discharged for off-duty misconduct *unrelated* to work, eligibility for benefits must be analyzed under § 3); *Martin v. UCBR,* 713 A.2d 753, 754 (Pa.Cmwlth.1998). Off-duty misconduct will not support a finding of willful misconduct under § 402(e) unless it extends to performance on the job; in such case, the misconduct becomes work-related. For example, had Claimant appeared at work under the influence of marijuana ingested off-duty, § 402(e) would apply. The referee's statement that Claim-

43 P.S. § 752. Under § 3, the employer must demonstrate 1) the claimant's conduct was contrary to acceptable standards of behavior, and 2) the conduct in question directly reflects upon the claimant's ability to perform his assigned duties. *Robinson v. UCBR,* 119 Pa. Cmwlth. 133, 546 A.2d 750, 753 (1988).

ant's off-duty behavior was unacceptable is not sufficient. Behavior that may be unacceptable to an employer does not necessarily equate to § 402(e) willful misconduct; *Navickas*, at 290.

Of course, had the evidence linked the drug usage to Claimant's performance, a different result might ensue, but this Court is not in position to expand or allow expansion of the record at this stage. The referee specifically found there was nothing in the record to establish Claimant's drug use affected her work performance. Despite the absence of such findings by the referee, the Commonwealth Court attempted to explain why Claimant's behavior was not acceptable. The Commonwealth Court's scope of review in this matter was limited to determining whether there was a violation of Claimant's constitutional rights, an adjudication contrary to law, a violation of the UCBR's procedure, or a finding of fact unsupported by substantial evidence. *Id.*, at 288. Neither the referee nor the UCBR made findings that would allow a reviewing court to conclude Claimant's conduct affected her work. In finding Claimant "could have harmed patients" and "might attempt to work in a sufficiently impaired condition," the Commonwealth Court violated a tenet of appellate review: there is nothing of record to support this conclusion, however inviting it appears. To "reflect directly on" her job performance, there must be evidence, not just a vague extrapolation of "safety problems." *Navickas* rejected a "higher standard of care" when evaluating whether health care workers' negligence or inadvertence could be willful misconduct under § 402(e). Absent a higher standard, the Commonwealth Court's concerns, unquestionably properly motivated, cannot transform this off-duty conduct into willful misconduct.

The conclusion that Claimant's off-the-job drug use constitutes willful misconduct under § 402(e) is unsupported. It is not insignificant that absent her admissions, Claimant's performance was apparently satisfactory. Simply put, Employer failed to establish Claimant's conduct was work-related, so § 402 does not provide grounds for denying benefits.

The Commonwealth Court went on to perform a § 3 analysis; the administrative tribunal did not. *See Jones v. UCBR*, 127 Pa.Cmwlth. 635, 562 A.2d 935, 937 n. 5 (1989) (declining to consider case under § 3 when UCBR did not). Section 3 may be an independent basis for denying benefits, "when an individual is unemployed through his or her own fault due to conduct *not connected with work.*" *Gillins v. UCBR*, 534 Pa. 590, 633 A.2d 1150, 1156 (1993) (citing *Southeastern Pennsylvania Transportation Authority*, at 976–77). Section 3 provides "an independent basis for denying unemployment compensation benefits where claimants were unemployed due to some activity, often wholly unrelated to their work, which nevertheless bore upon their fitness for employment." *Jones v. UCBR*, 513 Pa. 45, 518 A.2d 1150, 1151 (1986).

As the OES, the referee, and the UCBR only considered § 402(e) as a basis for denial, assertion of ineligibility under § 3 has been waived. In *Wing v. UCBR*, 496 Pa. 113, 436 A.2d 179 (1981), the claimants were denied benefits under the theory they voluntarily quit. (*See* 43 P.S. 802(b)). The claimants appealed and a hearing was conducted on the voluntary quit theory; the claimants lost, then appealed to the UCBR, which affirmed the referee's decision. The claimants then appealed to the Commonwealth Court, which reversed on the voluntary quit theory but remanded to the UCBR to consider a willful misconduct theory first advanced in the Commonwealth Court. This Court reversed the remand because the right to raise that defense to paying benefits had been waived.

In *Wing*, the UCBR argued an employer does not control the theory of law upon which a case is decided, so an employer should not suffer if the theory is wrong. *Id.*, at 181. While an employer may not control the decision, it still must raise any theory it believes is supportive. "[E]ven if [OES], the [r]eferee, and the Board all espoused the incorrect theory, the employer must at least propose the allegedly correct theory or waive consideration of it." *Id.* The UCBR in *Wing* also asserted "the piecemeal adjudication process," remanding the

matter for further proceedings on new theories first raised on appeal, would not prejudice the claimants:

It is difficult to imagine what could be more prejudicial to claimants than if, after nearly two years of litigation and appeals, [the claimants] find themselves before the lower tribunal and again forced to litigate issues long since waived, and uncertain if yet other, novel theories will be thrust upon them in another two years.

*Id.* Thus, we are constrained to reverse the Commonwealth Court because § 3 was not raised before the UCBR; as a theory for denying Claimant benefits, it is waived.

Accordingly, the order of the Commonwealth Court is reversed. This matter is remanded to the UCBR for computation of benefits only.

Chief Justice ZAPPALA concurs in the result.