# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Obst,                         :
                          Petitioner      :
                                          :
          v.                              :   No. 132 C.D. 2014
                                          :   Submitted: June 6, 2014
Unemployment Compensation                 :
Board of Review,                          :
                          Respondent      :

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                     **FILED: July 21, 2014**

Christopher Obst (Claimant), representing himself, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that denied his claim for benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) (relating to willful misconduct). Claimant contends the Board's findings are not supported by substantial evidence as the evidence relied upon was either improperly admitted over Claimant's objections or not admitted. In addition, Claimant argues the Board erred in determining that his conduct constituted work-related misconduct under Section 402(e) of the Law. Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e).

Claimant worked as a primary therapist for NR Pennsylvania Associates, LLC (Employer) at its Retreat at Lancaster County (Retreat), a drug and alcohol rehabilitation center, from December 2012 until July 15, 2013, when Employer discharged him. Claimant applied for unemployment compensation benefits, which the local service center denied under Section 402(e) of the Law. Claimant appealed, and hearings before a referee were held.

At the referee's hearing, Employer presented the testimony of Joann Michalski, executive assistant, and Chrissy Gariano, executive director (Employer's Witness), as well as documentary evidence, including text messages exchanged between Claimant and a former patient, which the referee admitted over Claimant's objections. Claimant testified on his own behalf.

Based on the evidence presented, the referee made the following relevant findings. Employer discharged Claimant for professional misconduct because of inappropriate contact with a former patient of the Retreat in violation of Employer's policies. Employer's Certified Alcohol and Drug Counselor Code of Conduct Policy provides, in relevant part, that a counselor will: espouse objectivity and integrity as a responsibility; be competent in his field; observe legal and moral standards, including all Federal and State laws governing his practice; protect the client's welfare; safeguard the integrity of the counseling relationship; and, protect the client, agency, counselor and the profession's financial relationship.[2] Employer's Ethics Policy edifies counselors concerning ethics in the profession, and sets the boundaries for counselor-client relationships. Employer's

---

[2] This Finding, Finding of Fact No. 3, was made in error, as discussed below.

2

Code of Corporate Integrity provides, in relevant part, that conflicts of interests should be avoided and that personal interests that influence or appear to influence one's ability to make objective decisions are to be avoided. Finally, Employer prohibits contact with a former patient for one year. Claimant was aware or should have been aware of Employer's policies. Referee's Op., 5/23/14, Findings of Fact (F.F.) Nos. 2-7.

Claimant engaged in off-duty conduct with a former patient of the Retreat by sending text messages containing sexual overtones and an invitation to a personal outing. Claimant's text messages to the client included his own photograph with a rubber duck, calling the client "super awesome," telling the client "now that we're friends that doesn't mean we have ... therapist-patient boundaries anymore," and a request that the client send him a picture of herself. F.F. No. 13. In addition, Claimant asked the client about her preference for lip gloss, engaged her on her mode of dress for the outing, and exchanged personal contact information with the client, which was prohibited by Employer's rules. Claimant actually met the client on an outing he initiated. At the outing, the client was visibly intoxicated, and Claimant took her home when he realized she was intoxicated. F.F. Nos. 8-9, 11-16.

Claimant stated his text messages contained a thread of encouragement to have the client re-enter rehabilitation for her addiction, although the communications were personal in nature. F.F. No. 10. Ultimately, the referee determined that, although Claimant stated he consistently encouraged the client to seek help for rehabilitation, the text messages are replete with sexual overtones and

innuendos as well as an invitation to join him on a personal outing. This is contrary to the professional relationship established by Claimant with the client during her previous treatment. The referee did not find merit in Claimant's allegations that his text messages to the client were designed primarily to have the client re-enter rehabilitation. The referee denied benefits upon concluding Employer met its burden of proving it terminated Claimant's employment for willful misconduct under Section 402(e) of the Law. Claimant appealed to the Board, which adopted the referee's findings and conclusions in their entirety and affirmed. From this decision, Claimant now petitions for review. Employer intervened.

On appeal,[3] Claimant argues the referee erred by admitting into evidence the photocopies of text messages, over Claimant's objections, and the Board erred by relying on this evidence in its decision. He also claims the Board erred by relying on exhibits, which the referee ruled were inadmissible. In addition, Claimant asserts substantial evidence does not support the Board's finding that he should have been aware of Employer's one-year rule guiding therapist-patient interactions and boundaries, when Employer offered no written policy regarding this rule. Finally, Claimant contends substantial evidence does not support the Board's determination that Employer met its burden under Section 402(e) of the Law.

---

[3] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Oliver v. Unemployment Comp. Bd. of Review, 5 A.3d 432 (Pa. Cmwlth. 2010) (en banc).

Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to his discharge … from work for willful misconduct connected with his work …." 43 P.S. §802(e). "[W]illful misconduct" is defined by the courts as: "(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014) (citing Grieb v. Unemployment Comp. Bd. of Review, 827 A.2d 422 (Pa. 2002)).

The employer bears the initial burden of proving a claimant engaged in willful misconduct. Id. When asserting a discharge based on a violation of a work rule, an employer must establish the existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008).

Once an employer meets this burden, a claimant may then prove he had good cause for his actions. Dep't of Corr. v. Unemployment Comp. Bd. of Review, 943 A.2d 1011 (Pa. Cmwlth. 2008). A claimant can establish good cause by showing his actions were justifiable or reasonable under the circumstances. Id. Whether a claimant's actions constitute willful misconduct and whether a claimant proved good cause are both questions of law fully reviewable by this Court. Id.

5

Further, in unemployment compensation cases, the Board is the ultimate fact-finder. Peak v. Unemployment Comp. Bd. of Review, 501 A.2d 1383 (Pa. 1985); Spence v. Unemployment Comp. Bd. of Review, 29 A.3d 117 (Pa. Cmwlth. 2011). As fact-finder, the Board is empowered to resolve conflicts in the evidence and to make credibility determinations. Spence.

The Board's findings are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. Hessou v. Unemployment Comp. Bd. of Review, 942 A.2d 194 (Pa. Cmwlth. 2008). The fact one party may view testimony differently than the Board is not grounds for reversal if the facts found are supported by substantial evidence. Daniels v. Unemployment Comp. Bd. of Review, 755 A.2d 729 (Pa. Cmwlth. 2000).

Moreover, "[f]indings of fact made by the Board, which are not *specifically* challenged, are conclusive upon review." Hessou, 942 A.2d at 198 (emphasis in original) (quoting Steinberg Vision Assocs. v. Unemployment Comp. Bd. of Review, 624 A.2d 237, 239 n.5 (Pa. Cmwlth 1993)). In determining whether substantial evidence exists, we view the record in the light most favorable to the party that prevailed before the Board, and give that party the benefit of all reasonable inferences that can be drawn from the evidence. Johns. With these principles in mind, we review Claimant's contentions.

First, Claimant argues the Board erred by relying on photocopies of the alleged text messages, which the referee improperly admitted over Claimant's objections. Specifically, Claimant argues the text messages were improperly

6

offered and relied upon for the truth of the matter asserted. Additionally, Claimant maintains, the exhibits were not authenticated because Employer did not introduce telephone records. For these reasons, Claimant contends such evidence is not competent evidence to support the Board's findings.

The traditional rules of evidence are relaxed in administrative hearings and proceedings, and all relevant evidence of reasonably probative value may be received. Section 505 of the Administrative Agency Law, 2 Pa. C.S. §505; Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.), 861 A.2d 938 (Pa. 2004). Although the evidentiary rules are relaxed, they are not abandoned. Gibson. Further, questions concerning the admission and exclusion of evidence are generally within the sound discretion of the administrative tribunal and are not to be reversed on appeal absent a finding of an abuse of discretion. Id.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa. R.E. 801(c). Ordinarily, hearsay evidence is inadmissible unless some exception applies. See Pa. R.E. 802.

In Walker v. Unemployment Compensation Board of Review, 367 A.2d 366 (Pa. Cmwlth. 1976), this Court established a relaxed standard to apply to the use of hearsay evidence in administrative proceedings. We held:

> (1) Hearsay evidence, properly objected to, is not competent evidence to support a finding of the Board; (2) Hearsay evidence, admitted without objection, will be given its natural probative effect and may support a finding of the Board, if it is corroborated by any

7

> competent evidence in the record, but a finding of fact based solely on hearsay will not stand.

Id. at 380 (citations omitted); accord Myers v. Unemployment Comp. Bd. of Review, 625 A.2d 622 (Pa. 1993); Stugart v. Unemployment Comp. Bd. of Review, 85 A.3d 606 (Pa. Cmwlth. 2014).

As for authentication, Rule 901 of the Pennsylvania Rules of Evidence provides, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa. R.E. 901. Authentication of electronic communications, such as text messages, requires more than mere confirmation that the number or address belonged to a particular person. Commonwealth v. Koch, 39 A.3d 996 (Pa. Super. 2011). Circumstantial evidence, which tends to corroborate the identity of the sender, is required. Id.

Here, Employer offered black and white and color copies of text messages purportedly exchanged between Claimant and the client. Certified Record (C.R.), Referee's Hr'g, Ex. Nos. E-2 and EE-1; C.R., Referee's Hr'g, Notes of Testimony (N.T.), 9/17/13, at 21. Employer offered the text messages to show not only what prompted Employer's investigation of Claimant but to show Claimant's inappropriate conduct as exhibited in the texts. Claimant objected to the text exhibits for multiple reasons including hearsay and lack of authentication. N.T., 9/17/13, at 7-8, 17-18, 19-21.

Notwithstanding Claimant's objections, when Claimant testified, he readily admitted he authored and sent the texts to the client. N.T., 9/20/13, at 63.

8

He further admitted the photocopies of the texts offered into evidence were accurate, but he testified Employer's exhibits did not include all of the text messages exchanged between him and the client.  Id.

Because Claimant admitted he authored the text messages, his challenges to this evidence are unavailing.  Thus, Claimant's own testimony authenticated the exhibits.  Further, his testimony establishes various hearsay exceptions that apply to the text messages.  See Pa.R.E. 803(25) (admission by party opponent); 803.1(1) (inconsistent statement of a witness).

Moreover, the Board's findings were not based solely on the objected-to evidence, but rather on Claimant's own testimony about the evidence. Significantly, Claimant testified regarding the content of the text messages.  N.T., 9/20/13, at 50-55.  According to Claimant's own testimony, Claimant texted the following to the client: "magical lip gloss," "thanks for spending the night with me," "if you would have fallen asleep in the car ...," "I don't want to have sex with you ...," "[l]uv," "[n]ow that were [sic] friends it doesn't mean we have the therapist/patient boundaries anymore," and "you have the option of allowing me to impregnate you and then you can become one of my cult members."  Id. at 50-53. Claimant and the client also exchanged photographs of each other.  Id. at 53, 64. Claimant invited and then met the client for coffee, but took her home upon realizing she was intoxicated.  Id. at 55.

Claimant attempted to explain his reasons for sending the texts and the context in which they were sent.  Id. at 50-55.  Notwithstanding Claimant's

explanations, the overall nature of the texts is sexual, flirtatious and highly inappropriate. Even Claimant recognized the texts "may seem initially questionable ...." Id. at 40; see id. at 54 ("if I had to write these texts again, would I, no .... I would not do this again."); id. at 80 ("poor wording"). In addition, Claimant asked the client to erase the texts prior to her readmission to the Retreat. Id. at 45, 64.

Given all the foregoing, the Board's findings regarding Claimant's conduct are supported by substantial, competent evidence.

Next, Claimant contends the Board improperly relied on exhibits, which the referee did not admit, for its findings regarding Employer's policies. The Board's Finding of Fact No. 3 is based on Employer's Certified Alcohol and Drug Counselor Code of Conduct Policy, which is part of Employer's Code of Ethics and offered by Employer as Exhibit No. E-3. Upon review of the hearing transcript, the referee sustained Claimant's objection to this exhibit in part (by removing pages governing Certified Alcohol and Drug Counselors). This was because this portion of the Code did not apply to Claimant as he was not a certified counselor. N.T., 9/17/13, at 28-29. Consequently, the Board's Finding of Fact No. 3 is not supported by the record evidence.[4]

---

[4] The referee also sustained Claimant's objection to Exhibit No. E-12 (NAADAC Code of Ethics) in its entirety because Claimant is not a member and does not hold any certification or licensure through NAADAC, and Employer withdrew the submission. N.T, 9/17/13 at 31. However, none of the Board's findings are based on this evidence.

Although Finding of Fact No. 3 is not supported by the evidence, the Board's other findings relating to Employer's policies are supported by record evidence. The Board found Employer's Code of Corporate Integrity provides, in relevant part, that conflicts of interests should be avoided and that personal interests that influence or appear to influence one's ability to make objective decisions are to be avoided. F.F. No. 5. This finding is supported by Exhibit No. E-9 - Employer's Code of Corporate Integrity, which the referee admitted without objection. See N.T., 9/17/13, at 4; N.T., 9/20/13, at 18-20.

The Board also found Employer's ethics policy edifies counselors concerning ethics in the profession, and sets the boundaries for counselor-client relationships and, Employer prohibits contact with a former patient for one year. F.F. Nos. 4, 6. These findings are supported by Employer's Witness's testimony.

Employer's Witness testified regarding Employer's standards and how they were communicated to and known by Claimant. She stated Employer provided ethics training to its staff, during which boundary issues and requirements were discussed. N.T., 9/17/13, at 16, 24, 25, 39. According to Employer's Witness, Claimant attended and successfully completed these training seminars. Id. at 24-25, 39, see Ex. E-11 (Cert. of Training, Ethics/Compliance, 1/10/13). She further testified Employer has an unwritten policy prohibiting romantic or inappropriate interaction with a former patient for at least one year, and Employer made Claimant aware of this rule during training. N.T., 9/20/13, at 11, 20-21. An employer may expect even an unwritten policy to be followed. Graham v. Unemployment Comp. Bd. of Review, 840 A.2d 1054 (Pa. Cmwlth. 2004)

11

(providing an employer may expect its employees to comply with its non-written directives).

Additionally, Employer's Witness explained Employer is licensed by the Pennsylvania Department of Drug and Alcohol Programs, which requires reporting of any violations of therapist-patient boundaries. N.T., 9/17/12 at 38-39. Such boundaries are important to protect the integrity of the clinical treatment program and safeguard patients who suffer from drug or alcohol addiction. Id. She explained such patients are extremely vulnerable and need to be able to trust their therapists. N.T., 9/20/13, at 34. In this situation, that trust was broken when Claimant engaged in a social relationship with the client and sent inappropriate text messages to her. Id. Employer's Witness testified Claimant's text messages were not therapeutic and harmed the client. Id. at 15, 32-34.

Although Claimant denied knowledge of the one-year social interaction rule, Claimant admitted therapist-patient boundaries were part of his training as well as generally accepted standards in his field. N.T., 9/20/13, at 57, 66-67. He testified the purpose of boundaries is to protect patients and safeguard therapist objectivity. Id.

Although Finding of Fact No. 3 is not supported by the evidence, the Board's other findings relating to Employer's ethical standards are supported by record evidence. By texting inappropriate messages and meeting socially with the client, Claimant crossed professional boundaries in violation of Employer's ethical standards. Claimant's conduct was contrary to the professional relationship

12

established by Claimant with the client during her treatment at the facility. Claimant's conduct amounted to a total disregard of the standards of behavior Employer had a right to expect of its employees. The Board did not err in determining Employer established a reasonable work rule regarding therapist-patient boundaries, Claimant's awareness of the rule, and its violation. Thus, the Board properly concluded Claimant was ineligible for benefits under Section 402(e) of the Law.

Finally, Claimant contends Employer did not meet its burden under Section 402(e) of the Law because the alleged offending conduct did not take place in connection with Claimant's work. Claimant argues the text messaging occurred outside of work, with a person who was no longer a patient at the facility, and the texts were not work-related. He claims the Board erred by applying Section 402(e) of the Law rather than Section 3 of the Law, 43 P.S. §752,[5] relating to off-duty conduct.

Generally, "off-duty misconduct will not support a finding of willful misconduct precluding unemployment compensation benefits, unless it extends to performance on the job; in such case, the misconduct becomes work-related." Palladino v. Unemployment Comp. Bd. of Review, 81 A.3d 1096, 1101 (Pa. Cmwlth. 2013) (quoting Burger v. Unemployment Comp. Bd. of Review,

---

[5] Section 3 of the Law provides that the employer bears the burden of proving that the claimant's conduct was contrary to acceptable standards of behavior, and the claimant's unacceptable conduct directly affects or reflects upon the claimant's ability to perform his assigned duties. Frazier v. Unemployment Comp. Bd. of Review, 833 A.2d 1181 (Pa. Cmwlth. 2003).

13

801 A.2d 487, 491 (Pa. 2002)). "There must be an aspect of the conduct that renders it work-related." Id. We explained:

> Sections 3 and 402(e) of the Law are not parallel legal theories. Rather, Section 402(e) is used to disqualify claimants for work-related misconduct, whereas Section 3 is used to disqualify claimants for non-work-related misconduct which is inconsistent with acceptable standards of behavior and which directly affects the claimant's ability to perform his assigned duties. Under Section 402(e) of the Law, the employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. Under Section 3 of the Law, the employer bears the burden to prove (1) that the claimant's conduct was contrary to acceptable standards of behavior and (2) that the claimant's unacceptable conduct directly affects or reflects upon the claimant's ability to perform his assigned duties.

Palladino, 81 A.3d at 1100-1101 (internal citations, quotations and footnotes omitted).

Here, Claimant admitted the conduct leading to the termination of his employment was work-related on his application for benefits. C.R., Item No. 4, Claimant's Separation Information, 8/1/13, at 1. The local service center denied benefits under Section 402(e) of the Law. C.R., Item No. 5, Notice of Determination, 8/5/13. At the referee's hearing, the referee asked Claimant whether the case should be reviewed under Section 3 of the Law, which addresses off-duty conduct. N.T., 9/17/13, at 29. Claimant asserted Section 3 was not applicable under the facts of this case. Id. Consequently, the referee directed Employer to proceed under Section 402(e), not Section 3 of the Law. Id. Having waived the issue before the referee, Claimant cannot now argue on appeal that the

14

referee erred by not applying Section 3 of the Law. See <u>Dehus v. Unemployment</u> <u>Comp. Bd. of Review</u>, 545 A.2d 434 (Pa. Cmwlth. 1988).

Accordingly, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Obst,                   :
                    Petitioner      :
                                    :
        v.                          :   No. 132 C.D. 2014
                                    :
Unemployment Compensation           :
Board of Review,                    :
                    Respondent      :

# **O R D E R**

**AND NOW**, this 21st day of July, 2014, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge