IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uniontown Auto Spring, Inc., A : 
Pennsylvania Corporation, : 
                    Petitioner : 
                            : 
        v. : 
                            : 
Unemployment Compensation Board : 
of Review, : No. 2076 C.D. 2013
                Respondent : Submitted: July 18, 2014


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI      FILED: August 13, 2014


        Uniontown Auto Spring, Inc. (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) finding that Mary F. Smith (Claimant) was not ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because her termination was not due to willful misconduct. For the reasons that follow, we affirm.

---

      [1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751–914.

Claimant worked as a full-time bookkeeper and office manager for Employer since 1999. She was the sole person responsible for tracking and reporting all employee time to a third-party processor, ADP, which generated and issued employee paychecks. In 2013, an accountant alerted Employer of its excessive overtime and payroll costs, and Employer requested that its financial, payroll and timekeeping records be audited. Following the audit on May 1, 2013, Employer terminated Claimant and subsequently opposed her application for unemployment compensation benefits, asserting that she falsified her payroll documents and misappropriated Employer's funds by paying herself overtime to which she was not entitled.

The UC Service Center denied Claimant's application, finding her ineligible for benefits under Section 402(e) of the Law[2] because she engaged in willful misconduct[3] and concluded that she received an overpayment of benefits pursuant to Section 804(a) of the Law.[4] Claimant appealed these determinations.

---

[2] Section 402(e) of the Law states, in pertinent part, "An employe shall be ineligible for compensation for any week — … (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act…." 43 P.S. §802(e).

[3] "Willful misconduct" has been defined as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 197 (Pa. 1996). An employer bears the burden of establishing that an employee engaged in willful misconduct. **(Footnote continued on next page…)**

Before the Referee, Employer's Vice President, Michael Marinich, testified that during Claimant's tenure, she, alone, performed Employer's payroll by collecting employees' hours from them and inputting the hours into a payroll-service worksheet. He further testified that Claimant falsified her payroll records when, on April 6, 2013, Claimant took 1.5 hours off to attend a medical appointment but failed to include the proper deduction on her payroll documents and was, therefore, overpaid. He also stated that between April 15–21, 2013, Claimant logged and was paid for 66 hours of work, but based on his own notes regarding when Claimant reported to and left work, she worked only 34.25 hours.[5] Likewise, between April 22–28, 2013, Claimant claimed 54 hours on the payroll records submitted to ADP, but according to Vice President Marinich's notes, she

---

**(continued…)**

*Burger v. Unemployment Compensation Board of Review*, 801 A.2d 487, 489 (Pa. 2002). If the employer satisfies its burden, the burden then shifts to the claimant to establish that her action was justified or reasonable under the circumstances. *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. 1976).

[4] Section 804(a) of the Law provides:

> Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue….

43 P.S. §874(a).

[5] Vice President Marinich testified that because he does not generally work on Fridays, he relied upon a supervisor, Joe Taylor (Supervisor Taylor), to report Claimant's hours on those days.

worked only 27.7 hours. Additionally, he testified that on April 16, 2013, he observed Claimant's daily worksheets and noticed that she already entered her overtime for April 14–20, 2013, ahead of time. Claimant recorded her time in advance again the following week.

Regarding Claimant's schedule, he stated that from January 2012 through September 2012, Claimant consistently claimed 40 regular hours and 25 overtime hours; and from September 2012 through May 2013, she claimed 40 regular hours and 26 overtime hours. He explained that Claimant was scheduled to work only eight hours per day, did not come into the office on weekends, and did not have additional assignments to complete during the evenings or weekends. He testified that he never authorized her to work from home, and that upon her return to the office from time off, she did not provide him with work product, but he conceded that Claimant typically did not provide him with her work product unless she had questions about it.

On May 1, 2013, Vice President Marinich met with Claimant and Supervisor Taylor to discuss these discrepancies. Vice President Marinich testified that at the meeting, Claimant admitted to falsifying the payroll documents by including excessive overtime, offered to reimburse Employer for any excess money she was paid, and volunteered to enroll in counseling. As a result of this discussion, Claimant's employment was terminated.

On cross-examination, Vice President Marinich conceded that Employer did not maintain any written policies regarding time-keeping. He stated

4

that he was unaware of the work, if any, Claimant completed at home, but admitted that she finished the monthly statements at home, although he was unaware of the hours required to do so. Regarding the period of April 15–28, 2013, he stated that he was unaware whether she took work home with her. He further conceded that although he became aware of the overtime Claimant had been claiming in early April 2013, he gave her a raise at the end of that month. He did not request that Claimant pay the money back and did not report a theft to the authorities or to Employer's insurance carrier, even though Employer maintained employee-theft protection.

Employer also presented the testimony of Supervisor Taylor, who stated that "[e]verybody there works overtime" and that he averaged about 20 hours of overtime per week. (Reproduced Record [R.R.] at 35a, 36a.) Although he stated that he was unaware of any other employee who takes work home, he conceded that in the past, he took work home but did not claim the time. He explained that beginning in April 2013, he verbally reported to Vice President Marinich the times at which Claimant, with whom he shared an office, reported to and left work on Fridays but that he did not maintain any written records. He was unable to recall whether Claimant admitted during the May 1, 2013 meeting that her payroll records were inaccurate.

Employer also presented the testimony of Michael Sandzimier (Sandzimier), the Certified Public Accountant who prepares Employer's annual tax returns. He stated that he was familiar with Employer's policies and practices regarding timekeeping, which required employees to report their time off to ADP

5

as vacation or sick time. He further stated that an employee is required to work 40 regular hours in a work week before an employer is required to pay overtime.

Sandzimier testified that he performed an audit of the payroll records by comparing the hours submitted to ADP with Employer's logbooks which contained notations of employee appointments and time spent out of the office. As a result of his audit, he found "numerous instances where the time off was not reported as time off and where regular time was charged." (*Id.* at 42a.)[6]

On cross-examination, Sandzimier conceded that he did not know whether Claimant took work home with her and agreed that she had to be

---

[6] Specifically, Sandzimier stated that according to the logbook, Claimant was off on March 26, 2012, but that the payroll records she submitted to ADP claimed 40 hours of regular time plus 25 hours of overtime, with no deduction for sick or vacation time. The log likewise indicated that Claimant was off on May 3–4, 2012, but she claimed 25 hours of overtime that week in addition to 24 hours of regular time for the 3 days she worked. On May 26–27, 2012 (a Saturday and Sunday, respectively), Claimant was off but reported 40 hours of regular time plus 25 hours of overtime for that week. The log showed that Claimant was on vacation from July 27–August 2, 2012, but she claimed 40 hours of regular time and 25 hours of overtime that week. Similarly, the log indicated that she was on vacation Friday, August 3, 2012, and had surgery on Monday, August 6, 2012, but she claimed 40 hours of regular time plus 25 hours of overtime, with no deductions for either of those days. On April 14–15, 2012 (a Saturday and Sunday, respectively), the logs showed that Claimant was off but she claimed 40 regular hours plus 25 hours of overtime. Again, on November 5, 2012, Claimant was off, but the ADP records claim 40 hours of regular time and 26 hours of overtime without mention of sick or vacation time. On November 13 and 15–16, 2012, Claimant missed time from work, but the ADP records do not reflect time off, and Claimant claimed 40 hours of regular time and 26 hours of overtime. Finally, Employer's office was closed on Thanksgiving, and Claimant took a vacation day the following day, but her payroll documents claimed eight hours of holiday time, eight hours of vacation time, 24 hours of regular time, and 26 hours of overtime.

compensated for any work completed at home. He further acknowledged that he could not personally verify the accuracy of the logbooks.

In support of her application for unemployment benefits, Claimant testified that Vice President Marinich and his brother, John, who supervised Claimant before he left the company, continuously authorized her to perform overtime work at home. She explained:

> I did anything from writing up slips to putting slips in Microsoft. I wrote up checks on occasion on invoices, sales tax, Pennsylvania/West Virginia sales tax, I double checked all my taxes at specifically within the last year because we were really, really busy and we were shorthanded, so I wouldn't make any mistakes in submitting those. I had a worker's [sic] comp audit I did at home, statements I did every month at the end of the last day of the month or the beginning of the month, depending on how it got done, I would take those home and that occurred more of the time period that John has been off, which approximately a year (inaudible) since March.

(Id. at 61a.) She further testified that when she began completing the statements at home, her overtime increased from 25 to 26 hours. She was not aware of any written policies regarding timekeeping and was never advised that the way she handled it was improper. She also stated that Employer paid overtime for any hours worked in excess of eight hours per day, and that vacation time and holidays constituted time worked for purposes of computing overtime.

7

Claimant explained that Vice President Marinich intended to cut costs by administering a drug test and terminating the employees who he anticipated would fail the test, but hours before Claimant was terminated, all test results came back negative. She stated that during her May 1, 2013 meeting, Vice President Marinich advised her that she was being terminated for unjustified overtime and that she never admitted to claiming hours she did not work. She maintained that she did, in fact, work all hours claimed.

Regarding Employer's logbook, Claimant testified that it does not accurately set forth the hours she worked. By way of example, she stated that on April 16, 2013, she went into work early, at about 6:30 A.M., to make up the time she missed from leaving early for a dentist appointment. She also stated that because the logbook was never amended, changes to appointments were not accurately reflected.

On cross-examination, Claimant conceded that she did not specify the time she took off on the payroll documents she submitted to ADP. She stated that even while on vacation, she worked and could claim the time in advance because she "had every day scheduled out" and, therefore, knew the tasks she would be completing and how long each took. (*Id.* at 67a.)

Based on the testimony and evidence presented at the hearing, the Referee found that as the only employee acting as office manager and bookkeeper, Claimant was expected to complete her job duties even when she was scheduled off. He further found that Claimant completed "extensive work for the employer

8

from her home during the evening and on weekends," including when she was on vacation. (*Id.* at 213a.) The Referee credited Claimant's testimony that she was paid overtime when she worked more than eight hours per day and when she worked from home when scheduled off due to holiday time, regardless of the number of hours worked. Noting that Claimant performed the same job since 1999, the Referee credited Claimant's testimony that she had become so efficient at scheduling her work that she was able to set forth the hours she worked nearly a week ahead of time.

The Referee concluded that Employer failed to meet its burden of proving that Claimant's actions constituted willful misconduct because, although Claimant claimed substantial overtime hours, Employer failed to prove that she did not work the claimed hours. Instead, the Referee concluded that Employer sought to remedy cash-flow problems by either reducing the number of employees or reducing the overtime hours worked. Employer anticipated that a company-wide drug test would yield positive results and it planned to terminate the positions of those who tested positive, but when all results were negative, Employer elected instead to reduce the overtime hours by terminating Claimant. As such, the Referee issued an order reversing the Services Center's determinations that Claimant was ineligible for benefits and that she received an overpayment.

Employer appealed to the Board, which adopted and incorporated the Referee's findings and conclusions and affirmed his decision that Claimant was entitled to benefits with no overpayment. This appeal followed.[7]

Employer first contends that the Board erred in finding that Claimant did not engage in willful misconduct, arguing that she falsified payroll records as established through Vice President Marinich's and Sandzimier's testimony, as well as Claimant's ADP payroll records and the logbook entries. In support of its argument, Employer asserts that on two occasions, Claimant reported more compensable hours than she actually worked, as observed and recorded by Vice President Marinich. Employer further argues that "[t]he record is also replete of instances where the Claimant completed and processed payroll worksheets without making appropriate deductions for vacations, personal days, and other absences" and that Claimant fabricated her compensable hours, including her overtime hours, by entering them onto her worksheet during the preceding week. (Employer's Br., at 22.)

Essentially, Employer wants us to accept its version of the evidence when it was considered and duly rejected by the Referee who credited Claimant's

---

[7] Our review is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record, whether errors of law were committed, whether agency procedure was violated, or whether constitutional rights were violated. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1153 (Pa. 1993). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

testimony that she worked extensively from home on evenings and weekends,[8] that even when she was out of the office, she was expected to and did perform her work duties by working while on vacation, and that over the course of her tenure, she became so efficient in scheduling her work that she was able to set forth her hours, which have been virtually the same since 2002, during the preceding week. Essentially, Employer argues that we should accept its version of events over that offered by Claimant, but as we have stated time and time again, questions of credibility and evidentiary weight are within the sole discretion of the Board. *See Eduardo v. Unemployment Compensation Board of Review*, 434 A.2d 215, 217 (Pa. Cmwlth. 1981). The Claimant's testimony, which the Referee and Board accepted as credible, provides substantial support for the conclusion that Claimant did not engage in willful misconduct.[9]

Employer also claims that the record lacks substantial evidence to support the findings that: (1) Claimant consistently worked 40 hours of regular time and 25 hours of overtime; (2) Claimant completed *all* of her job duties while on vacation; (3) Claimant worked extensively on the weekends; and (4) Claimant

---

[8] Although Vice President Marinich testified that he did not authorize Claimant to work from home, he conceded that she regularly completed the monthly statements at home and that otherwise, he did not know when she took work home. (R.R. at 19a, 24a–28a.) Likewise, Sandzimier's testimony was based only upon his review of the ADP records and Employer's logbooks. He was without knowledge regarding what work, if any, Claimant completed at home. (*Id.* at 52a.)

[9] Because we find Employer's argument that Claimant falsified payroll records without merit, we need not address its contention that as a result of the falsification, Claimant misrepresented her compensable time and received funds to which she was not entitled.

could predict how many hours she worked in advance of actually working those hours. We find Employer's argument unpersuasive.

Regarding the hours Claimant worked, the Referee noted that since 2002, Claimant has claimed and Employer has paid her for approximately 40 regular hours and 25 overtime hours. Claimant's own testimony corroborated this point, and Supervisor Taylor agreed that "[e]verybody there works overtime." (R.R. at 6a, 35a–36a.) Additionally, the Referee emphasized that in late April 2013, even after learning of the overtime hours Claimant was submitting, Employer offered her a raise. The finding that Claimant has consistently worked 40 regular hours and 25 overtime hours is supported by substantial evidence.

In support of its argument that Claimant did not complete *all* of her job duties while on vacation, Employer cites Vice President Marinich's testimony that Claimant did not furnish work product upon her return. Initially, we note that the relevant question is not whether Claimant completed *all* of her work on vacation but whether she actually worked the hours claimed. Regardless, the testimony does not support Employer's argument because Vice President Marinich specified that Claimant did not typically provide her work product to him for review unless she had a question about it, and, therefore, her failure to produce it is of little moment. For the reasons discussed above, substantial evidence supports the finding that Claimant worked the hours she claimed while on vacation.

Similarly, Employer's argument that the record lacks evidence to support the finding that Claimant worked extensively during the weekends misses

12

the mark. The Referee's finding was not limited to weekends, but rather noted that Claimant "does extensive work for the employer from her home during the evening and on the weekends." (*Id.* at 213a.) Although Claimant's testimony did not delineate the hours worked or tasks completed during the evenings versus during the weekends, she did testify that when working from home, she executed slips, input the slips into Microsoft Word, drafted invoices, reviewed the taxes she calculated, and completed a workers' compensation audit and monthly statements. Although this testimony does not specifically establish that Claimant worked extensively on weekends, it does establish that she worked extensively from home and provides substantial support for the conclusion that she actually worked the hours claimed.

Finally, Employer contends that Claimant's predictions regarding how many hours she would work in subsequent weeks constituted pure speculation. However, the Referee rejected this contention, instead finding that over the course of Claimant's tenure, she became efficient at scheduling her work each week to the point that she knew how many hours she would work a week in advance. This finding is further supported by the fact that Claimant worked essentially the same number of hours every week for over a decade.

Accordingly, because substantial evidence supports the finding that Claimant did not falsify her payroll records or misappropriate funds from Employer, the Board's decision that Claimant did not engage in willful misconduct under Section 402(e) of the Law is affirmed.

_____
DAN PELLEGRINI, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uniontown Auto Spring, Inc., A     :
Pennsylvania Corporation,     :
                Petitioner     :
                   :
       v.             :
                   :
Unemployment Compensation Board   :
of Review,     :
                Respondent   :   No. 2076 C.D. 2013

# **O R D E R**

AND NOW, this 13<u>th</u> day of <u>August</u>, 2014, the order of the Unemployment Compensation Board of Review dated October 31, 2013, at No. B-557437, is affirmed.

_____
DAN PELLEGRINI, President Judge