IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Abdal H. Muhammad, | : |
|         Petitioner | : |
| | :   No. 1342 C.D. 2015 |
|       v. | : |
| | :   Submitted: January 22, 2016 |
| Unemployment Compensation | : |
| Board of Review, | : |
|         Respondent | : |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                        FILED: August 8, 2016


          Abdal H. Muhammad (Claimant) petitions, *pro se,* for review of the June 29, 2015 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision that Claimant was ineligible for unemployment compensation benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1] For the following reasons, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that an employee shall be ineligible for benefits for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work.

## Facts and Procedural History

Bon Appétit Company (Employer) employed Claimant as a line cook from February of 2014, through his last day of work on February 8, 2015. (Referee's Finding of Fact No. 1.) Employer's Attendance and Lateness Policy (Policy) provided for termination of employment for three incidents of "no call, no show" within any twelve-month period. *Id.* at No. 2. Claimant was aware of the Policy by his signed acknowledgment. *Id.* at No. 3. On March 24, 2014, Employer issued a final, written warning to Claimant for not calling or reporting for work on March 23, 2014. *Id.* at No. 4.

On February 8, 2015, Claimant left work early due to a urinary tract infection. *Id.* at No. 5. On February 9, 10, and 11, 2015, Claimant was absent and properly reported off from work. *Id.* at No. 6. Claimant returned to work on February 12, 2015, but was still experiencing pain. *Id.* at No. 7. His manager, Jared Budd (Manager), informed Claimant that "because he was still in pain, he could go home as the employer brought an extra person on shift in case the [C]laimant did not report for work." *Id.* at No. 8. Manager told Claimant to rest over the weekend and to report on February 15, 2015,[2] for his next scheduled shift. *Id.* at No. 9. Claimant is diabetic and uses insulin to control the condition. *Id.* at No. 10. Claimant,

---

[2] Referee's Finding of Fact No. 9 listed February 16, 2015, as the date of Claimant's next scheduled shift when he was to return to work. This was a typographical error because the date evidenced in other areas of the referee's decision, as well as the record, confirm that Claimant's return date was February 15, 2015. *See* Finding of Fact at No. 13 ("On February 15, 2015 and February 16, 2015, the [C]laimant did not report for work or call to report his absences from work."), and Referee's decision at 2 ("[Manager] testified that . . . the [C]laimant was not discharged and was expected to return to work on February 15, 2015. The Referee finds the testimony of [Manager] to be credible with respect to the events leading up to the [C]laimant's discharge from employment."). *See also* Notes of Testimony (N.T.) at 2, 3-4, 10; Employer's Exhibit 5.

however, was not taking his insulin at that time because he could not afford the medication. *Id.* at 11. During this conversation, Manager noted that Claimant seemed to be more aggressive when he was not taking his insulin and could not be trusted around the students. *Id.* at 12.

On February 15 and 16, 2015, Claimant did not show for work or report his absences from work. *Id.* at No. 13. On February 17, 2015, after receiving no contact from Claimant, Manager began the process for terminating Claimant's employment. *Id.* at 14. On February 24, 2015, Employer terminated Claimant for three occurrences of "no call, no show" for work within a twelve-month period. *Id.* at 15. Claimant has multiple medical issues and physical injuries; however, Claimant is able and available for work. *Id.* at 16.

Claimant filed a claim for benefits with the local job center, which determined that Claimant was ineligible for benefits under sections 402(e) and 401(d)(1)[3] of the Law. Claimant appealed the local service center's denial of benefits and a hearing was scheduled before a referee on May 11, 2015.

Manager testified that Claimant was employed full-time as a line cook beginning in February of 2014. Manager described the events leading up to Claimant's termination as follows. He testified that, on February 8, 2015, Claimant left work early with a urinary tract infection. Although Claimant was absent from work on February 9, 2015, February 10, 2015, and February 11, 2015, he indicated that they communicated with each other on those days.

---

[3] Section 401(d)(1) provides that compensation shall be payable to any employee who is or becomes unemployed, and who "is able to work and available for suitable work." Section 401(d)(1) of the Law, 43 P.S. §801(d)(1).

Manager stated that Claimant reported for work on February 12, 2015, but was still in a lot of pain. Manager explained that he told Claimant to take the day off, that he already had someone in for Claimant, to rest the next two days, and to return to work on February 15, 2015.[4] Specifically, Manager testified that, after discussing Claimant's continued pain, he informed Claimant:

> . . . that we had brought an extra person on the shift just in case and that why not he just rest, just to take the day off. It's okay. No penalty. He was not scheduled for the next two days, so we came to the agreement that the next day, which, the next day he worked . . . would have been . . . Sunday the 15th. And it was agreeable. We came to a decision. [Claimant] said that he would rest over the weekend and then he would see us then.

(N.T. at 4.) According to Manager, at the end of their meeting on February 12, 2015, it was understood that Claimant was still on the schedule and that Employer wanted him to work. Manager asserted that there was nothing in the conversation that would have led Claimant to believe he was terminated and he fully expected to see Claimant the next week. (N.T. at 3-4, 6, 10-11.)

Manager noted that Claimant did not call or show up for work on February 15, 2015, the return date they had agreed upon. Further, he indicated that he never heard from Claimant after the last day Claimant worked on February 12, 2015. Manager explained that Claimant's "no call, no show" the next day, February 16, 2015, constituted his third within a one-year time period. Claimant's first "no call, no show" was evidenced by documentation dated March 24, 2014. (N.T. at 4; Employer's Exhibit 4.) Manager testified that, pursuant to the Policy, if there are

---

[4] Claimant was not scheduled to work on February 13 and 14, 2015. (N.T. at 3-4.)

4

three "no call, no shows" within one year, Employer pursues termination. Employer's Policy, dated June 28, 2007, provided in relevant part:

> Should you fail to show up for work or notify your supervisor three (3) days in a row, this will be recorded as job abandonment. **Three (3) one day incidents of "no call, no show" in any twelve (12) month period will result in termination** regardless of the number of other occurrences documented within the past twelve (12) month period. If you are absent for three (3) or more consecutive says [sic], a doctor's release may be required before or on the day you return to work.

(Employer's Exhibit 1) (emphasis added).

Manager stated that he submitted a request for Claimant's termination on February 17, 2015. Claimant was terminated by letter dated February 24, 2015, (N.T. at 3-4), which provided:

> Effective February 24, 2015, your employment with Bon Appétit Management Company at Lafayette College is considered involuntarily terminated due to no call, no shows on the following dates:
>
> March 23, 2014
> February 15, 2015
> February 16, 2015.
>
> This is (3) occurrences within a 1 year period.

(N.T. at 2; Employer's Exhibit 5.)

With regard to the conversation of February 12, 2015, Manager informed Claimant that he could no longer trust Claimant around students. Manager explained that Claimant's position placed him in an open kitchen, behind a hot grill, and with students constantly in front of him. Manager asserted that Claimant's

5

behavior became aggressive in stressful situations when his insulin was low. Manager testified that he was concerned that, in such a situation, Claimant would have a volatile reaction to students or staff members. Manager acknowledged his discomfort with Claimant's location out front near the students, but denied that his concern was related to Claimant's attendance or work performance. Manager indicated that when an employee did not show up for work, he generally would contact them. Manager testified that it was difficult contacting Claimant when he was absence because Claimant listed another person's name and phone number for his contact information. However, Manager had no knowledge of whether Claimant was contacted on February 15, 2015, because Manager was not working that day. (N.T. at 6, 11-12.)

Claimant confirmed that he was aware of the Policy and signed an acknowledgment that he received the Policy. However, Claimant asserted that Manager terminated him during their February 12, 2015 conversation. Claimant explained that Manager informed Claimant that he could not trust Claimant around the students any longer because he was not taking his insulin so he should go home, and that he had someone else to fill Claimant's position. Claimant stated that he was no longer employed because Manager filled his position. Claimant further stated that it was Manager's past practice to call Claimant for any missed days of work, but Manager never contacted him after the conversation of February 12, 2015. Therefore, according to Claimant, he had no impression other than that he was terminated. Further, Claimant asserted that Manager's testimony regarding his contact information pertained to his emergency contact number, and that he could be directly contacted via his cell phone number which has not changed. (N.T. at 6-8, 11-12; Referee's Exhibits 1-2.)

6

Claimant testified to his medical condition of diabetes which required him to take insulin, but denied any aggressive behavior or incidents due to the lack thereof. Although he was in contact with Manager on February 9, 10, and 11, 2015, he stated that the discussion pertained to his wages being insufficient to cover his medical expenses and, therefore, he was unable to obtain insulin. Claimant indicated that when the state picked up his medical coverage in April or May of 2015, he was able to resume taking insulin again. (N.T. at 6-9.)

In the service center's record of oral interview of Claimant, dated April 15, 2015, Claimant indicated that he was not able to work. At the hearing, Claimant testified that he was unable to work because he did not have insulin at that time. Claimant testified that he was now able to work because he has been able to obtain insulin through state-provided medical coverage. Claimant also testified that he has cataracts and glaucoma, which affect his ability to see small print, had neuropathy, and that future surgeries were required for his hand and foot. Claimant indicated that he filed a claim for Supplemental Security Income (SSI) benefits and a hearing was pending to determine whether he was disabled. (N.T. at 8-9.)

By decision and order dated May 11, 2015, the referee affirmed the determination of the local job center that Claimant was ineligible for benefits under section 402(e) of the Law, but reversed the local job center's determination that Claimant was also ineligible for benefits under section 401(d)(1) of the Law.[5] The referee made the following findings of fact. Claimant was employed by Employer as a line cook and last worked on February 8, 2015. (Finding of Fact No. 1.) Claimant was aware of Employer's Policy, which provided for an employee's termination for three absences from work in any twelve-month period without calling Employer to

[5] Claimant did not appeal the referee's decision section 401(d)(1) of the Law.

7

report off work ("no call, no shows"). *Id.* at Nos. 2, 3. Claimant's first "no call, no show" within the last twelve-month period was on March 23, 2014. *Id.* at No. 4. On February 8, 2015, Claimant left work early due to a urinary tract infection. *Id.* at No. 5. Claimant was absent and properly reported off from February 9, 2015, to February 11, 2015. *Id.* at No. 6. When Claimant returned to work on February 12, 2015, he was still experiencing pain from the infection. *Id.* at No. 7. On that date, Manager informed Claimant that "because he was still in pain, he could go home as the employer brought an extra person on shift in case the [C]laimant did not report for work." *Id.* at No. 8. After telling Claimant to rest over the weekend, Manager told him to report for his next scheduled shift, which was February 15, 2015. *Id.* at No. 9. Claimant did not show up or report from work on February 15, 2015, and February 16, 2015. *Id.* at No. 13. When Manager had no contact from Claimant, he began processing Claimant's termination. *Id.* at 14. By letter dated February 24, 2015, Employer terminated Claimant pursuant to the Policy for three occurrences of "no call, no show" for work within a twelve-month period. *Id.* at 15.

Further, the referee considered the conflicting testimony regarding the February 12, 2015 conversation, and specifically credited Employer's testimony with respect to the events leading up to Claimant's discharge. (Referee's decision at 2.) The referee concluded that Employer established the existence of the Policy which authorized termination for three "no call, no show" absences within a twelve-month period, that Claimant was aware of the Policy, and that Claimant knowingly violated the same. Hence, the referee determined that Employer sustained its burden of proving that Claimant's discharge was for willful misconduct in connection with Claimant's work, and that Claimant did not have good cause for his actions, thereby rendering him ineligible for benefits pursuant to section 402(e) of the Law.

8

Claimant appealed the referee's decision to the Board, claiming that he did not violate the Policy because he was terminated in the conversation of February 12, 2015, due to his medical condition. He asserted that such termination was apparent in the referee's Finding of Fact No. 8, which provided "[M]anager told the [C]laimant that because he was still in pain, he could go home as the employer brought an extra person on shift in case the claimant did not report for work."

By order dated June 29, 2015, the Board affirmed the decision of the referee, determining that the referee's decision was proper under the Law, and adopted the findings and conclusions of the referee.

On appeal to this Court,[6] Claimant argues that the Board erred because he did not violate the Policy; rather, he was terminated during the conversation of February 12, 2015. Claimant contends that Manager's testimony as to the conversation is not credible. Further, he asserts that contentions began with Employer in January of 2015 when he confronted Manager about a discrepancy in Claimant's pay.

The Board contends that its unchallenged findings conclusively establish that Claimant violated the Policy by failing to report or call off work three times during a twelve-month period. The Board maintains that Employer sustained its burden of proving that Claimant's actions rose to the level of willful misconduct.

---

[6] In an unemployment compensation appeal, our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Leace v. Unemployment Compensation Board of Review*, 92 A.3d 1272, 1274 n.2 (Pa. Cmwlth. 2014). Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion. *Umedman v. Unemployment Compensation Board of Review,* 52 A.3d 558, 564 (Pa. Cmwlth. 2012). Where substantial evidence supports the Board's findings, they are conclusive on appeal. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

## Discussion

Section 402(e) of the Law provides that an employee shall be ineligible for benefits for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work. Section 402(e) of the Law, 43 P.S. §802(e). While willful misconduct is not defined in the Law, our courts have defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grand Sport Auto Body v. Unemployment Compensation Board of Review,* 55 A.3d 186, 190 (Pa. Cmwlth. 2012).

The determination of whether Claimant's actions constitute willful misconduct is a question of law subject to this Court's review. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). The prevailing party below is entitled to the benefit of all reasonable inferences drawn from the evidence. *See id.* However, we note that the Board is the ultimate fact-finder in unemployment compensation proceedings. *Chapman v. Unemployment Compensation Board of Review,* 20 A.3d 603, 607 (Pa. Cmwlth. 2011). It is within the exclusive province of the Board to determine the weight and credibility of evidence, and the Board is free to reject even uncontradicted testimony. *Ellis v. Unemployment Compensation Board of Review,* 59 A.3d 1159, 1164 (Pa. Cmwlth. 2013).

Where the alleged willful misconduct is based on violation of a work rule, the employer must establish the existence of the rule, the reasonableness of the

10

rule, the claimant's knowledge of the rule, and its violation. *Yost v. Unemployment Compensation Board of Review*, 42 A.3d 1158, 1162 (Pa. Cmwlth. 2012). If employer meets its burden, the burden shifts to the claimant to show good cause for the conduct. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). Good cause exists where the claimant's actions were justified or reasonable under the circumstances. *Ellis,* 59 A.3d at 1164.

Claimant argues that the Board erred in affirming the referee's decision because he did not violate the Policy. Claimant contends that Manager called Claimant into his office, informed Claimant that he hired someone else for his position, told Claimant that he could not trust him around the students, and then told him to punch out and go home. Claimant asserts that the February 12, 2015 conversation with Manager constituted a termination, and that any reasonable person would interpret it as such. Further, Claimant argues that Manager's testimony was not credible.

The Board argues that the referee's factual findings, adopted by the Board, are unchallenged and, thus, conclusive on appeal. The Board notes that all conflicts in testimony were resolved in favor of Employer, and the referee credited Employer's testimony that Claimant was not discharged on February 12, 2015. Claimant was scheduled to work on February 15, 2015, but failed to either call or report to work on February 15, 2015, and February 16, 2015. According to the Board, Employer sustained its burden of proving the existence of the Policy, Claimant's awareness of the Policy, and Claimant's violation of the Policy for failing to call or report for work on March 23, 2014, February 15, 2015, and February 16, 2015. The Board maintains that it properly determined that Claimant did not show

11

good cause for his actions, rendering Claimant ineligible for benefits pursuant to section 402(e).

Similarly, in *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667 (Pa. Cmwlth. 2010), the employer discharged the claimant for not calling or reporting for work on March 5, 2009, and March 6, 2009, in violation of the employer's policy providing that two days of "no call/no show" for work resulted in termination. The claimant testified that her aunt notified the employer of her absence, whereas the employer testified that no notification was received. The Board resolved the conflict in favor of the employer, and found that the claimant violated the policy by failing to call or report for work on March 5, 2009, and March 6, 2009, rendering her ineligible for benefits pursuant to section 402(e) of the Law. On appeal to this Court, the claimant challenged the Board's finding that her aunt did not provide notification to employer. We noted the Board's authority to assess credibility and make factual findings, which are conclusive on appeal if supported by substantial evidence in the record. We held there was substantial evidence to support the Board's finding, and affirmed the decision of the Board. *Id.* at 669-77.

Additionally, in *Beck v. Unemployment Compensation Board of Review*, 2015 WL 5446409 (Pa. Cmwlth., No. 2001 C.D. 2014, filed June 26, 2015), the employer had a policy providing that "[i]nstances of no call/no show (absent from work for an entire scheduled shift without proper notification as defined by department policy) will continue to be treated as ground for termination after 2 (two) occurrences . . . ." *Id.* at *1. The claimant was discharged for failing to call or report for work on March 29, 2014, March 30, 2014, and May 4, 2014. According to the employer's testimony, no phone calls or text messages were received by any of the individuals to whom absences were to be reported. The claimant testified that his

12

calls to employer went unanswered, and that he sent a text message advising of his absence, but acknowledged that this was not a proper method of notification under the policy. The referee credited the employer's testimony, and determined that the claimant violated the employer's policy for three "no call/no shows," rendering the claimant ineligible for benefits. The Board affirmed, and adopted the referee's findings. *Id.* at \*2. On appeal, we concluded that there was substantial evidence of record to support the Board's findings and affirmed the decision of the Board. *Id.* at \*4.

Here, the record also supports Claimant's awareness and violation of Employer's Policy, which provides for termination of employment upon the occurrence of three "no call, no shows" within a twelve-month period. Claimant's failure to make phone calls for the unexcused absences on March 24, 2014, February 15, 2015, and February 16, 2015, were a violation of the Policy which justified Claimant's discharge. Employer sustained its burden of proof establishing willful misconduct in connection with Claimant's employment, and the burden shifted to Claimant to show good cause[7] for violation of the Policy.

Claimant's proffered explanation of good cause for violating the Policy is the belief that he was terminated and Claimant maintains that Employer's testimony was not credible. In essence, Claimant asks this Court to accept his own version of the events that occurred on February 12, 2015. The referee, however, considered and rejected Claimant's testimony regarding the same. (Referee's

---

[7] Whether good cause exists is an issue for resolution by the Board, as fact finder and arbiter of the weight and credibility of the evidence. Therefore, all questions of credibility and conflicts in testimony are resolved by the Board. However, whether a claimant has proven good cause is a question of law subject to this Court's review. *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208 (Pa. Cmwlth. 2006).

decision at 2.) The referee credited Employer's testimony regarding the events leading up to Claimant's termination, and specifically found that Claimant was instructed to return to work on February 15, 2015 for his next scheduled shift. (Referee's decision at 2; Finding of Fact No. 9.) As we explained in *Bruce*, "[t]hat [C]laimant may have given 'a different version of the events, or . . . might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings.'" 2 A.3d at 671-72 (citing *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994)). Upon review of the record, we conclude that the referee's finding that Claimant was expected to return to work on February 15, 2015, is supported by substantial evidence and is conclusive on appeal. Hence, Claimant's contention that he was terminated on February 12, 2015, is without merit.

Given this record, we conclude that Employer sustained its burden of proof establishing that Claimant's actions constituted willful misconduct and Claimant failed to show good cause for violation of Employer's Policy.[8]

---

[8] For the first time on appeal, Claimant refers to a prior disagreement with Employer over his pay. Our review, however, is limited, to the existing record. *See* Pa.R.A.P. No. 1551(a). Because these facts do not appear of record, Claimant has waived any issues regarding the same on appeal. *See B.K. v. Department of Public Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012) ("For purposes of appellate review, that which is not part of the certified record does not exist. . . . '[I]t is the responsibility of the appellant to supply this Court with a complete record for purposes of review. The failure by an appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issues(s) sought to be examined.'") (citation omitted).

## Conclusion

Claimant failed to call or report for work on March 23, 2014, February 15, 2015, and February 16, 2015, in violation of Employer's Policy, which provided for termination of employment for three incidents of "no call, no show" within a one-year period. Employer sustained its burden of proof establishing that Claimant's actions constituted willful misconduct and Claimant failed to show good cause for violation of Employer's Policy. We find no error in the Board's affirmance of the referee's decision, which determined that Claimant committed willful misconduct and was ineligible for benefits pursuant to section 402(e) of the Law.

Accordingly, the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Abdal H. Muhammad,                          :
            Petitioner                  :
                                      :   No.  1342 C.D. 2015
            v.                           :
                                        :
Unemployment Compensation                   :
Board of Review,                            :
            Respondent                 :

## ***ORDER***

      AND NOW, this 8th day of August, 2016, the June 29, 2015 order of the Unemployment Compensation Board of Review is affirmed.


                                      _____
                                      PATRICIA A. McCULLOUGH, Judge