Robert Edward Robinson,       :
                                :
           Petitioner       :
                                :
          v.            : No. 263 C.D. 2016
                                : Submitted: December 9, 2016
Unemployment Compensation   :
Board of Review,             :
                                :
           Respondent     :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                 **FILED: April 18, 2017**

Robert Edward Robinson (Claimant) petitions, *pro se*, for review of an order of the Unemployment Compensation Board of Review (Board) affirming the determination of a Referee that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because he was discharged from his employment with PNC Bank (Employer or PNC) for willful misconduct. For the reasons that follow, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to willful misconduct connected to his or her work. *Id.*

Claimant served as a Financial Specialist II at Employer's bank branch at 1600 Market Street, Philadelphia, Pennsylvania, from August 4, 2014 through September 1, 2015. (Record Item (R. Item) 8, Referee's Hearing: Transcript of Testimony (H.T.) at 4, 17; R. Item 13, Board's Decision and Order, Findings of Fact (F.F.) ¶ 1.) Claimant filed a claim for unemployment compensation benefits after he was discharged from his employment for the commission of a dishonest act, which resulted in the loss of his coverage under the fidelity bond required by Employer as a condition of employment.[2] (R. Item 3, Employer Separation Information; R. Item 13, F.F. ¶¶ 2-3.) The Unemployment Compensation Service Center (Service Center) issued a determination on September 16, 2015 finding Claimant ineligible for benefits under Section 402(e) of the Law. (R. Item 4, Notice of Determination.) Claimant appealed and a hearing was held before a Referee on November 2, 2015, where Claimant appeared, represented by counsel, and Employer presented the testimony of its Employee Relations Investigator (Employer's Witness), who participated by telephone. On November 6, 2015, the Referee issued a decision and order affirming the determination of the Service Center. (R. Item 12, Referee's Decision/Order.) Claimant appealed and on January 27, 2016, the Board issued an opinion and order affirming the Referee's decision, and made the following relevant findings of fact:

---

[2] Employer's policy regarding fidelity bonds specifies that if Employer believes that an employee may have committed a dishonest act, either at work or outside of work, he is automatically not bonded and cannot remain at work. (Record Item 3, Employer Separation Information.) The policy further states that employees must be bonded in order to work for PNC, and dishonest acts violate the bond, regardless of whether there is actual monetary loss. (*Id.*)

5. The claimant held a power of attorney for his aunt, and the two had a joint checking account in Susquehanna Bank.

6. In accordance with the employer's Automatic Teller Machine (ATM) policy, when an individual deposits a check into a PNC ATM, the individual is automatically allowed to withdraw $100 even though the check will not clear until the following day.

7. The claimant was aware of the $100 cap.

8. On August 17, 2015, the claimant deposited a Susquehanna Bank check in the amount of $100.56 into a PNC ATM, and immediately withdrew $100 in cash from the ATM.

9. The Susquehanna Bank account on which the August 17 check was drawn had been closed by the bank and did not have sufficient funds to cover the amount of the August 17 check.

10. On August 28, the claimant again deposited a Susquehanna Bank check from the same account, this time in the amount of $100.28, and immediately withdrew $100 in cash from the ATM.

11. Both checks were returned to the employer for insufficient funds.

12. When confronted about his actions, the claimant told the employer's investigators that he knew the account was closed at Susquehanna but that he needed the money and he deposited the check so that he could withdraw the money immediately.

13. The claimant knew the Susquehanna Bank [account] from which the checks had issued had been closed.

14. By virtue of the claimant's actions, the claimant was in violation of the employer's policy regarding dishonesty.

15. The claimant was discharged on September 1, 2015 for violation of the employer's policy.

3

(R. Item 13, F.F. ¶¶ 5-15.)

In its opinion, the Board resolved conflicts in testimony on the issue of whether Claimant knew the Susquehanna Bank account on which he wrote both checks was closed and lacked sufficient funds in favor of Employer. (*Id.*, Discussion.) The Board determined that by virtue of depositing said checks into the PNC ATM and then withdrawing funds to which he was not entitled, Claimant acted in a dishonest manner, and therefore violated Employer's policy. (*Id.*) Further, the Board determined that even if Employer had not had a policy against dishonest acts, his actions fell "beneath the standard of behavior that a bank can expect from an employee…." (*Id.*) The Board concluded therefore that Claimant had committed willful misconduct, and was ineligible for benefits under the provisions of Section 402(e) of the Law, 43 P.S. § 802(e). Claimant petitioned this Court for review of the Board's opinion and order.[3]

Willful misconduct is defined by the courts as (i) an act of wanton or willful disregard of the employer's interest; (ii) a deliberate violation of the employer's rules; (iii) a disregard of standards of behavior which the employer has a right to expect of an employee; or (iv) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997); *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012). The employer bears the burden of proving that the claimant engaged in willful misconduct leading to the discharge.

---

[3] Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 710 n.4 (Pa. Cmwlth. 2013).

4

*Caterpillar, Inc.*, 703 A.2d at 456; *Scott*, 36 A.3d at 647. If the employer makes that showing, the burden shifts to the claimant to show good cause for his conduct. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013); *ATM Corporation of America v. Unemployment Compensation Board of Review*, 892 A.2d 859, 865 (Pa. Cmwlth. 2006).

On appeal Claimant asserts that he did not violate Employer's bonding policy because he had opted in for overdraft coverage and was therefore permitted to overdraw his bank account so long as he paid the discretionary fee that might be assessed against him by the bank. We reject this argument. The evidence is clear that Claimant was discharged from his employment not because he overdrew his PNC account, but rather because he did so with knowledge that the account on which he had drawn the deposited checks was closed, and Employer determined that his actions were dishonest, such that he could no longer be bonded.

Claimant also argues that he had no knowledge that the Susquehanna Bank account on which he wrote the two checks had been closed, and received no notice from PNC of the closing of the account. We find that there is substantial evidence in the record to support the opposite conclusion, reached by the Board, that Claimant was in fact aware that the Susquehanna Bank account was no longer open.

In his initial internet claim for benefits, Claimant indicated that the reason for his alleged rule violation was that his aunt, who has dementia, got her checks confused and gave him checks from an old account. (R. Item 2, Internet Initial Claims.) At the hearing, Claimant testified that he opened a new account for his aunt at the Police and Fire Federal Credit Union (PFFCU) and did not close the

5

account at Susquehanna Bank. (R. Item 8, H.T. at 9.) He stated that he did not know that the Susquehanna Bank closed the account at a zero balance, and he was still holding both banks' checks; he testified that he had simply made a mistake when he deposited the two Susquehanna Bank checks into his account at PNC. (*Id.*)

Employer's Witness testified that with regard to the first check, written on August 17, 2015, Claimant told her that he had opened a new account for his aunt at PFFCU, but that he had mistakenly grabbed the wrong check, from the closed account at Susquehanna Bank. (R. Item 8, H.T. at 6, 8.) Employer's Witness stated that it was plausible that Claimant might have made a mistake as to the first check, but that during the investigation he also told her that when he deposited the second check, on August 28, 2015, he knew that the Susquehanna Bank account was closed, but he deposited the check anyway because he needed the money right away and he knew that he could withdraw at least $100 immediately from PNC. (*Id.*)

Claimant denied that he told Employer's Witness that he knew the account was closed. (R. Item 8, H.T. at 9, 11.) He testified that he deposited the second check because he had not yet received notification from PNC that the Susquehanna Bank account had been closed. (*Id.*, H.T. at 10.) However, he subsequently acknowledged that he became aware on August 21, 2015 that the first check had been returned for insufficient funds, and on August 24, 2015, he deposited $100 into his PNC account after he "saw that the check came back." (*Id.*, H.T. at 11, 14.) Claimant was questioned, both by Employer's Witness and the Referee as to why, when he knew on August 21st that the first check had been returned, he nevertheless deposited another check from the Susquehanna Bank

6

account on August 28th. (*Id.*, H.T. at 17-18.) He responded that although he thought he had shredded the Susquehanna Bank checks, in fact he still had checks from both banks in his briefcase, and he again mistakenly pulled the wrong check. (*Id.*, H.T. at 17-18.)

The Board found Claimant's testimony not credible, and determined that Claimant knew that both the August 17th and August 28th checks were bad checks when he deposited them. The Board is the ultimate fact finder, and its credibility determinations and findings of fact are binding on this Court where they are supported by substantial evidence, even if there is other contrary evidence. *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667, 671-72 (Pa. Cmwlth. 2010); *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Given Claimant's admission that he knew on August 21st that the first check from the Susquehanna Bank account had been returned, and Employer's Witness' testimony that Claimant admitted to her that he knew the August 28th check was a bad check when he deposited it, the Board's findings here are supported by substantial evidence.

Finally, Claimant argues that at the hearing, Employer's Witness initially testified that Claimant was discharged from employment because he violated Employer's fidelity bonding policy and specifically that he engaged in the practice of "check kiting." Claimant asserts that he did not engage in "check kiting" and challenges the use of this term to characterize his actions, stating that the term is used to describe a form of check fraud that is different from the actions he took in depositing, and then withdrawing, funds from his account. Claimant cites extensively from a United States Supreme Court decision in which the Court dealt with a bank president's elaborate scheme involving the exchange and passing

7

of worthless checks between three different banks, and whether or not this conduct constituted the making of a false statement to a federally insured bank for the purpose of obtaining credit, as proscribed by a federal statute, 18 U.S.C. § 1014.[4] The Supreme Court decision has no relevance here, and we find no merit in Claimant's argument. There is indeed discussion of the meaning of the term "check kiting" in the course of the Referee hearing. After Employer's Witness initially referred to Claimant's actions as "check kiting," the Referee asked Employer's Witness to define the term, and she responded, "[t]hat's when you take a check from a closed account of a different bank and deposit it into PNC's ATM and then withdraw money immediately knowing that the account of the check that you deposited was not a good check and that account was closed." (R. Item 8, H.T. at 5.) Employer's Witness thus described precisely the actions which Employer determined, following its investigation, to have been taken by Claimant and to have constituted dishonest acts in violation of its policy, resulting in the loss of his fidelity bond and his discharge from employment. The Referee subsequently questioned Claimant as to whether he was "aware that check kiting was a violation of policy." (*Id*., H.T. at 8.) Claimant responded,

> I didn't personally. I've been in banking for a while. I thought check kiting was when you used multiple banks to do the third floating policy so that would be an example of let's say I had a Wells Fargo account, a PNC account and a Citizens account. And the floating policy was different from Wells Fargo. When people kite they write checks from different banks and deposit them into a bank and then when the availability comes up they write another check to cover that check. But I've never heard

---

[4] *See Williams v. United States*, 458 U.S. 279 (1982).

8

of kiting being deposited it in a [ATM] machine, which is PNC's policy.

(*Id.*)

Employer established that Claimant had completed, on August 5, 2014, its online training class regarding its Code of Business Conduct and Ethics for New Employees, and Claimant was therefore aware of its policy regarding the automatic loss of bonding if at any time an employee is believed to have committed a dishonest act. (R. Item 3, Employer Separation Information.) The Board credited the testimony of Employer's Witness that Claimant knew that the bank account on which he twice wrote checks, deposited them into his PNC account and immediately withdrew funds, had been closed and therefore knowingly, and in a dishonest manner in violation of Employer's policy, obtained funds from PNC to which he was not entitled. Moreover, Claimant failed to offer any good cause for this conduct.

We hold that the Board properly found Claimant ineligible for unemployment compensation benefits under Section 402(e) of the Law. Accordingly, the order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Edward Robinson,      :
                                  :
                Petitioner     :
                                  :
          v.                : No. 263 C.D. 2016
                                  :
Unemployment Compensation   :
Board of Review,              :
                                  :
             Respondent   :

## ORDER

AND NOW, this 18th day of April, 2017, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____

**JAMES GARDNER COLINS, Senior Judge**